IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 26, 2005

## STATE OF TENNESSEE v. DARRYL EUGENE WATTS

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2003-C-1754     J. Randall Wyatt, Jr., Judge**

_____

**No. M2004-01958-CCA-R3-CD - Filed September 2, 2005**

_____

Pursuant to a plea agreement, the defendant, Darryl Eugene Watts, pled guilty to rape, furnishing alcohol to a minor, and exposing a minor to pornography. He was sentenced to an effective eight-year sentence in confinement. On appeal, the defendant argues that the trial court erred in denying alternative sentencing. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID H. WELLES, J., joined.

Mike J. Urquhart, Nashville, Tennessee, for the appellant, Darryl Eugene Watts.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bernard F. McEvoy, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Following the entry of the defendant's guilty pleas, a sentencing hearing was held to determine how the defendant would serve his eight-year sentence. At the sentencing hearing, the defendant testified that he graduated high school with honors and began attending Nashville Tech before dropping out to start his own business. The defendant stated that he was attending Free Will Baptist Bible College and belonged to Faith Church, Incorporated.

The defendant testified that he had been married to the victim's mother, Jan Watts, for eight years before getting a divorce. The defendant stated that his divorce was "pretty messy." With regard to his present convictions, the defendant explained that he had received a phone call from his ex-wife, who told him that their fourteen-year-old daughter was infatuated with a seventeen-year-old

boy. As the defendant explained, his ex-wife was concerned about their daughter's relationship with this boy and asked him to speak to her.

According to the defendant, he picked his daughter up, went home, and cooked dinner. While preparing dinner, he poured himself an alcoholic beverage. When asked by his daughter if she could have a drink, he let her have some of his drink. After dinner, he asked his daughter if she was having sexual relations with the boy. The defendant stated that after his daughter denied having sex, he decided to demonstrate how to use a condom by placing it on a plastic cigar. He also showed her what lubrication looked like by placing some on his finger. The defendant then discussed various sexually transmitted diseases with his daughter. The defendant stated that he showed his daughter part of a pornographic videotape in order to "gross her out" and deter her from having sex. The defendant denied touching his "daughter in the way that she said [he] touched her."

The defendant testified that he pled no contest to the crime of rape because he feared being humiliated at trial and feared a jury would find him guilty. The defendant stated that he had a psychosexual evaluation, and he agreed to participate in a treatment program if released. The defendant admitted to having a drug problem but insisted that he was trying to recover. The defendant stated that he was willing to undergo alcohol and drug treatment. The defendant also indicated his desire to stay with his mother in order to help care for his father, who became disabled after surviving an aneurysm.

On cross-examination, the defendant admitted that he was divorced in 1994, and on two occasions in 1994, he was convicted of assaulting his wife. The defendant stated that he was placed on probation for eleven months and twenty-nine days for each offense. The defendant also admitted that he was later convicted of aggravated burglary which violated his probation sentence for his assault convictions. The defendant acknowledged that he was given a five year probation sentence for his aggravated burglary conviction. The defendant also acknowledged that he was convicted of attempt to commit burglary of a building in 2001, which violated his probation sentence for his aggravated burglary conviction. The defendant further acknowledged that he had used crack cocaine on an off since 1994, but he claimed that he had not used drugs for "almost a year and a half."

The defendant's mother, sister, and brother testified that they would help the defendant by providing him with a place to live and help him comply with the terms and conditions of probation. A psychosexual evaluation and a letter from the defendant's pastor were also admitted into evidence at the sentencing hearing.

The defendant's daughter, the victim, testified that on the night of the offense, the defendant picked her up from home and then stopped by a liquor store. The victim stated that once they arrived at the defendant's house, the defendant offered her a mixed drink and she drank it. The victim also stated that the defendant gave her the rest of his drink. According to the victim, she began to feel bad and "couldn't really stand up." The defendant then indicated that he wanted to talk to her, and they sat down on the bed. The defendant asked her if she had kissed or had sex with an older boy

she had been talking to. The defendant then showed her a pornographic tape and asked her if she had given "anyone head." She said no.

The victim testified that the defendant asked her if she knew how to use a condom. According to the victim, the defendant gave her a large candy cane, and she demonstrated how to put a condom on. He then showed her lubricant and asked her if she knew what it was used for. She said yes. The defendant then directed her to take her pants off, but she refused. However, the victim stated that she blacked out, and when she woke up, her pants and underwear were down around her ankles.

The victim testified that the defendant placed lubricant on his finger and placed his finger on her vagina. She stated: "He was moving it up and down. And he said, did that feel good? And I said nothing. And he tried to put his finger up inside. And I said that hurts. And he said, well, you are tight. You are a virgin." The victim testified that she pulled her pants up. She also stated that the defendant told her that she was too drunk to go home, so she remained at the defendant's house the rest of the night, lying in bed beside the defendant. She further stated that she could not sleep because of what happened to her.

Jan Watts, the victim's mother and the defendant's ex-wife, testified that she was married to the defendant for eight years and that he was the father of the victim. She stated the defendant's drug use was partly responsible for the divorce. In describing events that led up to the defendant's aggravated burglary conviction, she explained that after the defendant had been placed on probation, he came to the house in violation of a protective order and broke into the basement. She stated:

> I ran out of the house, ran down the street, screaming for someone to help me. I'm pretty fast, but I wasn't fast enough. [The defendant] caught me, drug me back to the house, got to the driveway. I had a knife in my hand . . . just in case . . . something would happen. . . . I was still screaming. I still had the knife in my hand. And he started shovelling [sic] gravel in my mouth, to make me shut up, and had me in a choke hold at the same time and drug me back in the house and held me there. I stabbed him in the leg in the process. It didn't stop him. He drug me back to the house and held me there until . . . daylight . . . . I managed to talk him out of - - he was very tired. I guess he hadn't slept in days. And I managed to convince him that everything was going to be okay. We were going to be all right. I needed to go to work and to get the kids to school. At that point, he - - he allowed me to go. . . . I made a phone call to the District Attorney's Office . . . . And they helped me out. And that was just one of the episodes.

Ms. Watts then explained that she had experienced other episodes of domestic violence that preceded this episode.

At the close of Ms. Watt's testimony, the trial judge prefaced his ruling with some closing remarks. The trial judge first apologized to the victim, stating:

First of all, I'm sorry . . . that the Court had to put you through this here today. And I'm sorry for your mother having to . . . [deal] with this. But . . . in a way, [I'm] glad that I did, because I got more to the truth of this today. And you're a fine person. You should leave here today with your head up high, because I think you've been as credible as any witness that's come in here this week. . . . You don't have anything to be feeling ashamed of or guilty about. You didn't do anything at all other than get taken advantage of by the last person in the world that should have been, your own father. . . .

Now, the reason that I'm glad that I did get to hear from you, though, is because the other day I was here, and I always try to be fair and listen to everyone. And I was here, listening to [the defendant's testimony]. He didn't say this. He admitted that he had, maybe, provided his daughter with some alcohol and admitted something about the pornography, but played it all down and played everything else down . . .

The trial judge then explained that he knew that the defendant "had two prior felony convictions and had been revoked off probation previously." According to the trial judge, after he heard the testimony of the defendant's mother, sister, and brother, he began to think that "maybe some of this ha[d] been exaggerated" and began to "consider[ ] certain things." However, the trial judge stated that after hearing the testimony of the victim, he was extremely impressed with her credibility. Accordingly, the trial judge denied probation, stating that it would be inappropriate in light of the present offenses, and the defendant's previous record and probation violations.

On appeal, the defendant argues that the trial court erred in denying probation or community corrections by failing to consider the relevant sentencing principles and not affirmatively articulating its reasons for the denial of these sentencing alternatives. Specifically, the defendant argues that he should have received probation or, in the alternative, community corrections under the "special needs" provision of Tennessee Code Annotated section 40-36-106(c).

Appellate review of a challenged sentence is a *de novo* review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). This presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn.1999). However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely *de novo* without the presumption of correctness. State v. Ashby, 823 S.W.2d 166, 169 (Tenn.1991). On appeal, the defendant has the burden of showing that the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. In conducting our review, this Court considers: (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing; (4) the arguments of counsel relative to sentencing alternatives; (5) the nature and characteristics of the criminal conduct involved; (6) any mitigating or enhancement factors; (7) any statements made by

the defendant in his or her own behalf; and (8) the defendant's potential or lack of potential for rehabilitation or treatment.  Tenn. Code Ann. §§ 40-35-103, -210; Ashby, 823 S.W.2d at 168.

A defendant is eligible for probation if the actual sentence imposed is eight years or less and the offense for which the defendant is sentenced is not specifically excluded by statute.  See Tenn. Code Ann. § 40-35-303(a).  In addition, a defendant is presumed to be a favorable candidate for alternative sentencing if the defendant is an especially mitigated or standard offender convicted of a Class C, D, or E felony and there exists no evidence to the contrary.  Id. § 40-35-102(6).  However, this presumption is unavailable to a defendant who commits the most severe offenses, has a criminal history showing clear disregard for the laws and morals of society, and has failed past efforts at rehabilitation.  Id. § 40-35-102(5); State v. Fields, 40 S.W.3d 435, 440 (Tenn. 2001).

A trial court shall automatically consider probation as a sentencing alternative for eligible defendants.  Tenn. Code Ann. § 40-35-303(b).  A trial court must also presume favorable candidacy for alternative sentencing unless it is presented with evidence sufficient to overcome this presumption.  See Ashby, 823 S.W.2d at 169. The presumption in favor of alternative sentencing may be overcome by facts contained in the presentence report, evidence presented by the state, the testimony of the accused or a defense witness, or any other source, provided it is made a part of the record.  State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996).  Moreover, entitlement to probation is not automatic and the defendant still bears the burden of proving suitability for full probation.  Tenn. Code Ann. § 40-35-303(b), Sentencing Commission Comments; State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997).

Guidance as to whether the trial court should grant alternative sentencing or incarcerate is found in Tennessee Code Annotated section 40-35-103.  Sentences involving confinement should be based upon the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. . . .

Tenn. Code Ann. § 40-35-103(1).

In this case, the defendant is not entitled to the presumption for alternative sentencing because he was convicted of rape, a Class B felony, and has a criminal history.  See id. § 40-35-102(5) & (6). Furthermore, the defendant is not eligible for community corrections under Tennessee Code Annotated section 40-36-106(a)(1)(B) and (C) because his conviction involves a

crime against a person.  However, as the defendant contends, he is eligible for community corrections under section 40-36-106(c), which provides:

> Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under the provisions of this chapter.

To be eligible for community corrections under subsection (c), the defendant must be eligible for probation.  State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996).  Because the defendant has an eight-year sentence, the defendant is eligible for probation, and thus eligible for community corrections under subsection (c).  See id.  If a defendant is eligible for community's corrections sentencing, then the following facts must be determined:

> (1) the offender has a history of chronic alcohol, drug abuse, or mental health problems, (2) these factors were reasonably related to and contributed to the offender's criminal conduct, (3) the identifiable special need (or needs) are treatable, and (4) the treatment of the special need could be served best in the community rather than in a correctional institution.

Id. at 439.

Arguing eligibility, the defendant points to his psychosexual evaluation, which was introduced as an exhibit at the sentencing hearing.  According to the evaluation, the defendant received a low score used to predict sexual offense recidivism and was considered a moderate to low risk for reconviction of a sexual or violent offense.  Based upon this score, the psychologist conducting the evaluation  stated that the defendant could comply with the conditions of probation if supervised closely.  The defendant also contends that he established he had a "long history of alcohol and crack cocaine abuse," and "was under the influence of alcohol at the time this incident."  The defendant also points to the testimony of his mother, sister, and brother, as evidence of his eligibility for community corrections or probation.

Initially we note that the trial court questioned the defendant regarding his psychosexual evaluation and his amenability to treatment but failed to specify any findings as to the defendant's rehabilitation potential.  Given that the trial court failed to articulate for the record whether it considered all the relevant facts surrounding the defendant's potential for rehabilitation, our review is a *de novo* review of the record without the presumption of correctness afforded to the trial court's sentencing determinations.  However, upon review of the record, we conclude that the trial court did not err when denying alternative sentencing.  The defendant has the burden of proving eligibility for community corrections under the "special needs" provision, or, in the alternative, suitability for probation.  Although the defendant provided some evidence at the hearing that he had a history of substance abuse, no substantial evidence was presented indicating that the defendant's substance

abuse "reasonably related to and contributed" to the defendant's conduct of rape. <u>See</u> <u>Boston</u>, 938 S.W.2d at 439. There is a significant distinction between meeting the minimum eligibility requirements for alternative sentencing and demonstrating entitlement to such relief. <u>See</u> <u>generally</u>, <u>State v. Taylor</u>, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987). Here, the record reflects that the trial court thoroughly considered the witness testimony and premised its denial on the basis of the seriousness of the present offenses, the defendant's previous probation violations, and the defendant's history of criminal convictions including assault, attempted burglary, and aggravated burglary. The record also reflects that the defendant violated the trust of his daughter in committing the present offenses. The record supports the trial court's decision to deny alternative sentencing. Therefore, looking at the record in its entirety, we are in agreement with the trial court that the defendant is not a suitable candidate for probation or community corrections and confinement is warranted. Accordingly, the judgments of the trial court are affirmed.

_____

J.C. McLIN, JUDGE